1    ALLAN E. ANDERSON (SBN 133672)
     allan.anderson@afslaw.com
2    OSCAR A. FIGUEROA (SBN 313238)
     oscar.figueroa@afslaw.com
3    BRITTANY TRINIDAD (SBN 346606)
     brittany.trinidad@afslaw.com
4    **ARENTFOX SCHIFF LLP**
     555 West Fifth Street, 48th Floor
5    Los Angeles, CA  90013
     Telephone:  213.629.7400
6    Facsimile:   213.629.7401

7    Attorneys for Plaintiff
     KRZYSZTOF GAGACKI

8

9              **UNITED STATES DISTRICT COURT**

10            **CENTRAL DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| 12 Krzysztof Gagacki, an Individual, | Case No. 2:23-cv-2876 |
| 13         Plaintiff, | **COMPLAINT FOR:** |
| 14    v. | **(1) BREACH OF CONTRACT;** |
| 15 Edmond Truong, an Individual, and DOES 1 through 20, inclusive, | **(2) BREACH OF FIDUCIARY DUTY;** |
| 16 | |
|        Defendants. | **(3) CONVERSION;** |
| 17 | **(4) INTENTIONAL INTERFERENCE WITH ECONOMIC ADVANTAGE;** |
| 18 | |
| 19 | |
| 20 | **(5) DEFAMATION;** |
| 21 | **(6) COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION;** |
| 22 | |
| 23 | **(7) DECLARATORY RELIEF; and** |
| 24 | **(8) UNFAIR COMPETITION (BUS. & PROF. CODE § 17200)** |
| 25 | **DEMAND FOR JURY TRIAL** |
| 26 | |

27

28

Plaintiff Krzysztof Gagacki ("Plaintiff" or "Mr. Gagacki"), by and through his attorneys, makes and files this Complaint against Defendant Edmond Truong ("Defendant"). In support of his Complaint, Mr. Gagacki alleges as follows:

### NATURE OF THE CASE

1.     Defendant has gone <u>rogue</u>. On or about October 27, 2022, Defendant stole approximately $2,000,000 USD in cryptocurrency from a joint digital wallet belonging to the parties and used to operate their joint venture in the Rebase app (https://rebase.gg/). The joint funds were maintained in a joint digital wallet that was accessible by both Mr. Gagacki and Defendant, to be used to conduct business operations and to which Mr. Gagacki is entitled to at least half. Defendant stole the cryptocurrency with full knowledge of his contract with Mr. Gagacki, a contract Defendant has affirmatively acknowledged but continues to breach.

2.     Worse yet, Defendant purportedly has ousted Mr. Gagacki from their joint venture and is now holding himself out to third parties as the sole owner and decisionmaker for the Rebase app. For context, the Rebase app is currently valued at a minimum of $150,000,000 based on the last round of investment it received in April 2022. The Rebase app has had three separate investment rounds with its total capital raise reaching in excess of $10,000,000 from some of the most recognized crypto-native venture capital firms, including, *inter alia*, Animoca Capital, Anti Fund Investment Fund, LLC, DeFiance Capital, Genblock Capital, Spartan Business & Technology Services, Inc., Shima Capital, and Three Arrows Capital. Mr. Gagacki has invested considerable time, money, and "sweat equity" towards building the Rebase app and securing the investments that have raised its profile and value.

3.     Defendant has also made misleading and defamatory statements to Mr. Gagacki's business contacts and Rebase app investors, which have had disastrous effects on Mr. Gagacki's reputation. Defendant's rampage continues as he has also intentionally interfered with prospective deals that Mr. Gagacki was actively negotiating and stopped them dead in their tracks. Meanwhile, Defendant has

highjacked the Rebase app brand and business and is making operations decisions, which he has no authority to make on his own and is further misappropriating joint funds. Defendant has also commandeered relevant social media accounts that make use of and infringe on Mr. Gagacki's trademark rights.

4.    Most recently, Mr. Gagacki has discovered that Defendant is in discussions with Arbitrum, one of the most popular blockchain networks with over $16,365,720,791 USD in fully diluted market capitalization, to issue the Rebase app's upcoming token on its native network. This announcement demonstrates the urgent and serious nature of this case. If a Rebase app token is listed on any major cryptocurrency exchange, the market value of the tokens, which will be minted on the Arbitrum network and offered to the public, could reach many times over the Rebase app's last round valuation of $150,000,000. Defendant's purported ouster of Mr. Gagacki is depriving him of the significant value of his share of the profits to be derived from the Rebase app.

5.    Mr. Gagacki has made numerous attempts to rein in Defendant to avoid escalating their dispute, but to no avail. Mr. Gagacki brings this action to stop Defendant from causing him further losses and damage.

**PARTIES**

6.    Plaintiff Krzysztof Gagacki is an individual and a citizen of the country of Poland.

7.    On information and belief, Defendant Edmond Truong is an individual and a citizen of the State of California.

8.    Plaintiff is presently unaware of the true names and capacities of the Defendants sued herein as Does 1 through 20, inclusive, and therefore sues such defendants by their fictitious names. Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of such defendants when they are ascertained. On information and belief, Plaintiff alleges that each of the fictitiously named defendants is responsible in some manner for the injuries suffered by Plaintiff.

9.     On information and belief, Plaintiff alleges that, at all times mentioned herein, Defendant, and each of the Doe Defendants was acting as an employee, agent, principal, officer, partner, joint venturer, director, alter ego, or other representative of one or more of the remaining defendants and, in committing the acts and/or omissions alleged herein, was acting within the scope and course of such employment, agency, partnership, joint venture, alter ego, or other relationship, and with the knowledge and consent of the remaining defendants.

## JURISDICTION AND VENUE

10.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds the statutory threshold, exclusive of interest and costs.

11.     This Court has general and specific personal jurisdiction over Defendant because, on information and belief, he is a citizen of the State of California. The misconduct as alleged in this Complaint constitutes significant contacts with the State of California consistent with the principles of due process. On information and belief, Defendant's actions have allowed him to direct the goods and services towards thousands of California residents. Defendant has derived substantial revenue from such activity in the State of California.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because the contract giving rise to the claims asserted herein was formed and negotiated in the State of California, and a substantial part of the events and misconduct alleged occurred in the State of California.

## FACTUAL BACKGROUND

### A.     The Agreement is Formed

13.     Plaintiff Krzysztof Gagacki is an entrepreneur and business maven with extensive expertise in the cryptocurrency and NFT space. Mr. Gagacki has spent the past several years building and selling successful companies. Indeed, Defendant has

praised Mr. Gagacki as a "a great marketer and also serial entrepreneur."[1] Mr. Gagacki has a particular interest in creating decentralized ecosystems for content creators to own their data.

14.    Rebase is an alternative reality ("AR") adventure and Web3 lifestyle application allowing users to explore, collect, and redeem exclusive digital rewards in real life. As an example, the Rebase app geo-mints and releases NFTs that users within the Rebase app community search for and collect all over the world. The Rebase app currently boasts over 5,000 downloads from the Apple App Store and Google Play Store. The Rebase app community consists of about 2,500 active users.

15.    On or about October 29, 2021, Mr. Gagacki and Defendant entered into an agreement, orally and in writing, to start a joint venture centered around building and releasing the Rebase app. It was understood by Mr. Gagacki and Defendants that the Rebase app would, in part, promote, create, mint, and sell NFTs in various locations throughout the world. It was also agreed by Mr. Gagacki and Defendant that they would jointly reap all the monetary benefits from the Rebase app, including from the minting and sale of NFTs.

16.    Over the course of several conversations (orally and in writing), based on their relevant expertise, Mr. Gagacki and Defendant further agreed that Mr. Gagacki would control day-to-day operations of the Rebase app business while Defendant would take charge of the marketing and fundraising aspects. It was at all times understood and agreed that the parties would be 50/50 partners in the joint venture (the "Agreement"), meaning that they would jointly share in the profits, losses, and right to control the venture.

17.    The joint venture began in earnest and significant capital – totaling in several millions of dollars – was raised.

18.    During this time, independent contractors were engaged and began to

---

[1] *See* https://medium.com/mexcglobal/ama-session-with-edmond-truong-from-formation-fi-form-d52fb0ae6ba9

1   actively work on bring the Rebase app to life.

2   **B.    The Cy-B3lla Project**

3        19.    Upon entering into the Agreement, Mr. Gagacki and Defendant further

4   agreed to work together to create and monetize NFTs using Bella Hadid's name,

5   image, and likeness in a project known as "Cy-B3lla" to be minted and sold through

6   the Rebase app (the "Cy-B3lla Project"). Mr. Gagacki had the relevant contacts in

7   the industry to make such a project work – and did in fact made it work. The Cy-

8   B3lla Project was highly anticipated and generated significant buzz in the NFT

9   space.[2]

10        20.    Although Mr. Gagacki and Defendant agreed to be 50/50 partners in the

11   joint venture, Mr. Gagacki would own and still owns the relevant intellectual property

12   related to Rebase and the Cy-B3lla Project.

13        21.    On or around March 9, 2022, Mr. Gagacki's company, IOVO AG,

14   entered into a NFT Collaboration Agreement with Bella Hadid. Mr. Gagacki

15   personally owns all applicable trademarks, including in the U.S. and Europe, for the

16   REB4S3 and Cy-B3lla marks.

17        22.    To date, approximately $1.5 million was paid to Bella Hadid for her

18   collaboration in the Cy-B3lla Project and an additional $1.5 million was paid to

19   various third parties and vendors who worked around the clock to create the NFTs as

20   well as the relevant promotional materials. Social media accounts were also created

21   to increase online engagement and to keep the Rebase app community and

22   prospective purchasers apprised regarding upcoming NFT drops.

23        23.    While the initial Cy-B3lla project was in progress, Mr. Gagacki also

24   began to actively negotiate a new agreement with Bella Hadid to continue and expand

25   the Cy-B3lla Project to include further collaborations for additional NFTs that would

26   feature designs from renowned fashion brands, such as Coperni, Louis Vuitton,

27

28   _____
[2] *See, e.g.*, https://hypebeast.com/2022/5/bella-hadid-first-nft-colletion-cy-b3lla; *see also* https://www.teenvogue.com/story/bella-hadid-cy-b3lla-nft-collection

Vivienne Westwood, and others.

C.    **Defendant Breaches the Agreement**

1.    **Defendant Steals Rebase App Joint Funds**

24.    Despite the Agreement, on or around October 27, 2022, Defendant unilaterally and inexplicably transferred Rebase app funds totaling approximately $2,000,000 USD worth of cryptocurrency from a joint digital wallet to a new digital wallet without notice to or authorization from Mr. Gagacki. Defendant appears to be the only person with access to the new digital wallet with Rebase app funds and has been misappropriating those funds from the time he transferred them to the present.

25.    Since October 2022, Defendant has refused multiple demands from Mr. Gagacki to provide him with access to the new digital wallet. Defendant's refusal to allow Mr. Gagacki access to the new digital wallet has hindered Mr. Gagacki's ability to continue Rebase app operations.

26.    Further, Mr. Gagacki has discovered that Defendant has failed to pay several third parties and vendors that were contracted to work on the Rebase app and the Cy-B3lla project. As a result, Mr. Gagacki has on numerous occasions paid these third parties and vendors out of his own pocket to avoid complete derailment of his business operations, which approximates to tens of thousands of dollars. To date, Mr. Gagacki has received several demands for payment of invoices that Defendant was supposed to pay out of the Rebase app joint funds but never did.

2.    **Defendant is Impeding Mr. Gagacki's Rights in the Joint Venture**

27.    Defendant has also purported to have ousted Mr. Gagacki from the Rebase app joint venture. The Rebase app is currently valued at a minimum of $150,000,000 based on the last round of investment it received in April 2022. The Rebase app has had three separate investment rounds with its total capital raise reaching in excess of $10,000,000 from some of the most recognized crypto-native venture capital firms, many of which Mr. Gagacki was able to secure.

1
2
3
4
5
6
7
8
9
10
11
12



13      28.    On or around April 10, 2023, Mr. Gagacki discovered that Defendant

14  was engaged in negotiation and has neared a deal with Arbitrum to issue Rebase's

15  upcoming token on its native network.

16
17
18
19
20
21
22
23
24
25
26
27
28



29.     On information and belief, if the Rebase Token is listed on any major crypto exchange, the market value of the tokens, which will be minted on the Arbitrum network and offered to the public, could reach many times over the last round valuation of $150,000,000 (the "Arbitrum Deal"). This increase in value of the Rebase app and any associated profits derived from Arbitrum Deal are subject to the Agreement between Mr. Gagacki and Defendant, which entitles Mr. Gagacki to at least half.

### 3.     Defendant's Defamatory Statements

30.     Adding insult to injury, Defendant also contacted Bella Hadid's agent and misrepresented that things had gotten "a bit out of hand" at Rebase and that Mr. Gagacki was no longer "employed" by Rebase. Mr. Gagacki also discovered that Defendant misled several Rebase app investors to believe that he – as opposed to Mr. Gagacki – was the founder and owner of Rebase. (collectively, the "Defamatory Statements").

31.     The Defamatory Statements are serious misrepresentations that have already resulted had disastrous effects on Mr. Gagacki's reputation. First, the Defamatory Statements have caused Bella Hadid refuse further involvement in the Cy-B3lla Project. Indeed, after Defendant made the Defamatory Statements, Bella Hadid's agent expressly halted ongoing negotiations for future projects with Bella Hadid and opportunities to enter into new agreements with companies, such as Louis Vuitton, Vivienne Westwood, and others are no longer obtainable. Mr. Gagacki has attempted to revive the negotiations with Bella Hadid's representation but has been unable to do so as a result of the Defamatory Statements. Defendant's Defamatory Statements have also negatively affected Mr. Gagacki's relationships with investors who were unaware of his involvement and joint ownership in the Rebase app joint venture. For example, investors have refused to communicate with Mr. Gagacki because they currently do not acknowledge Mr. Gagacki's ownership rights in the Rebase app, citing Defendant's Defamatory Statements as reason for their mistaken

belief.

32.    The Defamatory Statements have significantly harmed Mr. Gagacki's reputation and has already resulted in loss of significant business opportunities.

### 4.    Defendant Engages in Trademark Infringement

33.    Defendant has also commandeered the @REBASEgg and @cybellaxyz Twitter accounts. Specifically, Defendant has changed the password for these accounts and is actively denying Mr. Gagacki access.

34.    Troublingly, Defendant continues to use Mr. Gagacki's trademarks on the Twitter accounts in open defiance of Mr. Gagacki's trademark rights.

35.    Defendant's ongoing usage of the Rebase and Cy-B3lla marks during this time without Mr. Gagacki's authorization is misleading and confusing users on Twitter. Defendant's conduct irreparably damaged the prospects of a new Cy-B3lla Project for which Rebase had already invested millions of dollars. Mr. Gagacki has made multiple requests to Defendant to restore his access to the joint digital wallet and the Twitter accounts to no avail.

36.    Defendant's refusal to grant Mr. Gagacki this access is further impeding him from moving forward with Rebase app operations.

37.    Mr. Gagacki is being severely damaged by Defendant's misconduct both reputationally and monetarily.

### FIRST CAUSE OF ACTION

### (Breach of Contract)

### (Against Defendant Edmond Truong)

38.    Mr. Gagacki repeats, reiterates, and realleges each and every allegation set forth in all paragraphs with the same force and effect as if fully set forth herein.

39.    In or around October 29, 2021, Mr. Gagacki and Defendant entered into the Agreement. It was at all times understood and accepted that Mr. Gagacki would control day-to-day operations of the Rebase app business while Defendant would take charge of the marketing and fundraising aspects of the business. It was at all

times understood and agreed that the parties would be 50/50 partners in the joint venture, meaning that they would jointly share in the profits, losses, and right to control the venture. The parties conducted their business as 50/50 partners in the venture. Defendant has acknowledged the existence of the Agreement in writing.

40.     Upon entering into the Agreement, the parties further agreed to both work on the Cy-B3lla Project which required them to promote, create, mint and sell the Cy-B3lla NFTs and split the profits evenly in accordance with the Agreement.

41.     Mr. Gagacki substantially performed all of his duties pursuant to the Agreement by investing considerable time, money, and "sweat equity" towards building the Rebase app, the Cy-B3lla Project, and securing the investments that have raised the apps profile and value.

42.     In or around October 27, 2022, Defendant materially breached the Agreement by unilaterally transferring Rebase app funds totaling approximately $2,000,000 USD in cryptocurrency from a joint digital wallet to a new digital wallet without notice to or authorization from Mr. Gagacki. Defendant also materially breached the Agreement by purportedly ousting Mr. Gagacki from Rebase app operations and negotiating and entering into the Arbitrum Deal. Defendant is actively depriving Mr. Gagacki of all profits derived from the Rebase app, including the Arbitrum Deal. Defendant has further materially breached the Agreement by making the Defamatory Statements to Bella Hadid's agent and to Rebase investors. Defendant also materially breached the Agreement by failing to pay third parties and vendors contracted to work for the Rebase app and the Cy-B3lla Project, which forced Mr. Gagacki to pay these third parties and vendors out of his own money to avoid complete derailment of his business operations. Defendant further breached the Agreement by commandeering the @REBASEgg and @cybellaxyz Twitter accounts and infringing Mr. Gagacki's common law trademark rights.

43.     Defendant's material breaches have greatly damaged Mr. Gagacki.

44.     As a direct and proximate result of the foregoing material breaches, Mr.

Gagacki has suffered damages in an amount to be determined at trial, but not less than $77,000,000 USD, which reflects the amount Defendant misappropriated from the joint digital wallet, the value of the Rebase app, the value and any profits derived from the Arbitrum Deal, plus accrued interest, costs, and attorneys' fees to the extent permitted by contract or by law.

## SECOND CAUSE OF ACTION

### (Breach of Fiduciary Duty)

### (Against Defendant Edmond Truong)

45.     Mr. Gagacki repeats, reiterates, and realleges each and every allegation set forth in all paragraphs with the same force and effect as if fully set forth herein.

46.     Mr. Gagacki and Defendant entered into the Agreement to engage in the Rebase app joint venture to create and build NFTs through the Rebase app. Mr. Gagacki and Defendant also agreed to develop and release the Cy-B3lla Project through the Rebase app and similarly share in all the profits derived in accordance with the Agreement. Through the Agreement Mr. Gagacki and Defendant agreed that each had a joint interest in a common business, and an understanding that they would share profits, losses, as well as the right to joint control.

47.     As such, Mr. Gagacki and Defendant each owed a fiduciary duty to one another to act with the utmost good faith in the best interest of the Rebase app joint venture.

48.     Defendant's duty of loyalty to Mr. Gagacki prohibits him from acting adversely to Mr. Gagacki's interests in the Rebase app joint venture in accordance with the Agreement.

49.     Defendant knowingly acted against Mr. Gagacki's interests, and in Defendant's own self-interest, and breached his fiduciary duty to Mr. Gagacki by:

> (a)    transferring approximately $2,000,000 USD of Rebase app funds to a separate digital wallet that Defendant continues to refuse to provide Mr. Gagacki access to;

(b)     purportedly ousting Mr. Gagacki from Rebase app operations and negotiating and entering into the Arbitrum Deal. Defendant is actively depriving Mr. Gagacki of all profits derived from the Rebase app, including the Arbitrum Deal;

(c)     making the Defamatory Statements to Bella Hadid's agent, to Rebase investors, and other third parties;

(d)     failing to pay third parties and vendors contracted to work for the Rebase app and the Cy-B3lla Project, which forced Mr. Gagacki to pay these third parties and vendors out of his own money to avoid complete derailment of his business operations; and

(e)     commandeering the @REBASEgg and @cybellaxyz Twitter accounts and infringing Mr. Gagacki's common law trademark rights.

50.     Defendant's foregoing misconduct was a substantial factor in causing Mr. Gagacki harm because otherwise Mr. Gagacki.

51.     Mr. Gagacki has suffered damages as result of Defendant's breach of fiduciary duty in an amount to be determined at trial, but not less than $77,000,000 USD, plus pre-judgement interest.

52.     Defendant's conduct was malicious, oppressive and/or fraudulent as defined by California Civil Code section 3294, which warrants the imposition of punitive damages against Defendants in addition to the foregoing.

## **THIRD CAUSE OF ACTION**

### **(Conversion)**

### **(Against All Defendants)**

53.     Mr. Gagacki repeats, reiterates, and realleges each and every allegation set forth in all paragraphs with the same force and effect as if fully set forth herein.

54.     In accordance with the Agreement, Mr. Gagacki is entitled to access all Rebase app funds as well as a share of all profits and losses of the Rebase app joint

1  venture.

2  55.  Defendants have substantially interfered with Mr. Gagacki's property

3  by intentionally taking possession of approximately $2,000,000 USD worth of

4  cryptocurrency, which are Rebase app funds. Defendants did so by transferring the

5  funds from a joint wallet into a new digital wallet and denying Mr. Gagacki access.

6  Defendants have also negotiated and are entering into the Arbitrum Deal, which will

7  increase the Rebase app's value many times over the Rebase app's last round

8  valuation of $150,000,000. Defendants' knowledge of their unlawful acts is

9  evidenced by, at least, WhatsApp messages between Mr. Gagacki and Defendant

10  Edmond Truong where he admits to this misconduct.

11  56.  Mr. Gagacki did not consent to Defendants' transfer of the funds to a

12  new digital wallet and is currently unable to access the funds. Mr. Gagacki was also

13  entitled to be apprised regarding any new negotiations and deals, such as the

14  Arbitrum Deal. Mr. Gagacki is entitled to a share of the profits, losses, and the right

15  to control the Rebase app joint venture. Mr. Gagacki is entitled to any value and

16  profits derived from the Arbitrum Deal.

17  57.  Defendants' conduct was a substantial factor in causing Mr. Gagacki's

18  harm.

19  58.  Mr. Gagacki has suffered damages as result of Defendants' conversion

20  in an amount to be determined at trial, but not less than $77,000,000 USD, plus pre-

21  judgement interest.

22  59.  Defendants' conduct was malicious, oppressive and/or fraudulent as

23  defined by California Civil Code section 3294, which warrants the imposition of

24  punitive damages against Defendants in addition to the foregoing.

25  ///

26  ///

27  ///

28  ///

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FOURTH CAUSE OF ACTION**

**(Intentional Interference with Economic Advantage)**

**(Against All Defendants)**

60.     Mr. Gagacki repeats, reiterates, and realleges each and every allegation set forth in all paragraphs with the same force and effect as if fully set forth herein.

61.     Mr. Gagacki and Bella Hadid were in an economic relationship that would have resulted in an economic benefit to Mr. Gagacki and the Rebase app joint venture had Defendants not interfered. Mr. Gagacki was also in an economic relationship with renowned fashion brands, such as Coperni, Louis Vuitton, Vivienne Westwood, and others that also would have resulted in an economic benefit to Mr. Gagacki and the Rebase app joint venture had Defendants not interfered.

62.     Defendants knew about these relationships and the potential for pecuniary benefits to both Mr. Gagacki and the Rebase app joint venture.

63.     Defendants engaged in conduct that interfered with these economic relationships by contacting Bella Hadid's agent and intentionally misrepresenting that things at Rebase were getting "a bit out of hand" and that Mr. Gagacki was no longer "employed" by Rebase. Defendants' misrepresentations also disrupted ongoing negotiations with Bella Hadid, Coperni, Louis Vuitton, and Vivienne Westwood, which are no longer viable partnership opportunities.

64.     By engaging in this misconduct, Defendants intended to disrupt the relationships and/or knew that disruption of the relationships was certain or substantially certain to occur.

65.     The economic relationships were disrupted by Defendants' acts because it destroyed negotiations for new collaboration agreements. Additionally, such acts caused Bella Hadid's agent to request that Mr. Gagacki not contact any other third parties concerning a collaboration with Bella Hadid.

66.     Mr. Gagacki has been harmed by Defendants' misconduct and misrepresentations.

67.     Defendant's misconduct was a substantial factor in causing Mr. Gagacki's harm since Defendants made the misrepresentations, which resulted in the prospective deals with Bella Hadid and Coperni, Louis Vuitton, Vivienne Westwood, and others to no longer be viable opportunities.

68.     Mr. Gagacki has suffered damages as result of Defendant's intentional interference with an economic advantage in an amount to be determined at trial,  plus pre-judgement interest.

69.     On information and belief, Defendants' interference was intentional and done with malice, oppression, and/or fraud, entitling Mr. Gagacki to exemplary and punitive damages.

70.     Defendants' conduct was malicious, oppressive and/or fraudulent as defined by California Civil Code section 3294, which warrants the imposition of punitive damages against Defendants in addition to the foregoing.

## FIFTH CAUSE OF ACTION

### (Defamation)

### (Against All Defendants)

71.     Mr. Gagacki repeats, reiterates, and realleges each and every allegation set forth in all paragraphs with the same force and effect as if fully set forth herein.

72.     The Defamatory Statements were false statements. Defendants intentionally defamed Mr. Gagacki by misrepresenting to Bella Hadid's agent that things were getting "a bit out of hand" at Rebase and that Mr. Gagacki was no longer "employed" by Rebase. Defendants also misled Rebase investors to believe that he – as opposed to Mr. Gagacki – was the founder and owner of Rebase.

73.     The Defamatory Statements were not privileged and have a natural tendency to injure or cause special damages.

74.     Bella Hadid's agent and the Rebase app investors reasonably understood that the Defamatory Statements were about Mr. Gagacki because Defendants clearly included Mr. Gagacki's name.

75.    The Defamatory Statements are defamatory per se in that they falsely impugn dishonesty or questionably professional conduct on Mr. Gagacki, which has resulted in the loss of the Cy-B3lla project opportunities and have caused Rebase app investors to refuse to engage with Mr. Gagacki citing Defendants' Defamatory Statements as the reason for their mistaken belief that Mr. Gagacki is not a joint owner of the Rebase app.

76.    The Defamatory Statements have caused Bella Hadid halt ongoing negotiations for future Cy-B3lla Projects and prevented future opportunities to enter into agreements with companies, such as Coperni, Louis Vuitton, Vivienne Westwood, and others from coming to fruition. The Defamatory Statements have also created issues with some Rebase investors who are confused regarding the ownership of Rebase app and are losing confidence in their investments. Some investors are refusing to conduct business with Mr. Gagacki as a result of the Defamatory Statements.

77.    On information and belief, Defendants acted with actual malice in that they knew or had reason to know that the Defamatory Statements were false or they recklessly disregarded the truth or falsity of the Defamatory Statements.

78.    On information and belief, Defendants acted with actual malice and the specific intent to injure, cause harm, and damage to Mr. Gagacki's reputation without any reasonable basis for believing that the Defamatory Statements were true.

79.    As a result of the Defamatory Statements, Mr. Gagacki has suffered injury, harm, and damage to his business, business reputation, and his personal reputation, in an amount to be proven at trial.

80.    On information and belief, in making the Defamatory Statements, Defendants acted with malice, oppression, and/or fraud, entitling Mr. Gagacki to exemplary and punitive damages.

81.    The Defamatory Statements have caused harm to Mr. Gagacki's business and personal reputation in an amount to be determined at trial.

82.    As a result of the Defamatory Statements, the Defendants are liable to Mr. Gagacki for punitive damages in an amount sufficient to punish the Defendants and deter them from engaging in the same conduct in the future.

## SIXTH CAUSE OF ACTION

### (Common Law Trademark Infringement and Unfair Competition)

### (Against All Defendants)

83.    Mr. Gagacki repeats, reiterates, and realleges each and every allegation set forth in all paragraphs with the same force and effect as if fully set forth herein.

84.    Mr. Gagacki has common law trademark rights based on his continuous and systemic use of the REB4S3 and Cy-B3lla marks online.

85.    Mr. Gagacki is the owner of all right, title, and interest in and to the trademarks REB4S3 and Cy-B3lla in the U.S. and Europe.

86.    Defendants have committed acts of unfair competition, including trademark infringement, unlawful business practices, and related misconduct referred to in this Complaint. These actions constitute unlawful, unfair or fraudulent business acts or practices, and/or unfair, deceptive, untrue or misleading business practices. Defendants' acts constitute trademark infringement under California common law because Defendant is using the commandeered Twitter accounts (@REBASEgg and @cybellaxyz) to display and promote Mr. Gagacki's trademarks.

87.    Defendants' acts are willful, deliberate, and committed with knowledge that Defendants' ongoing unauthorized use of the marks is misleading and likely to cause consumer confusion.

88.    Mr. Gagacki is informed and believes that Defendant has derived and received and will continue to receive gains, profits, and advantages from the common law trademark infringement.

89.    Based on Defendants' improper use of Mr. Gagacki's trademarks, Mr. Gagacki has been damaged and is entitled to monetary relief in an amount to be determined at trial as well as a preliminary and permanent injunction enjoining

1   Defendant's continued use of the trademarks.

2       90.     Defendants' conduct was malicious, oppressive and/or fraudulent as

3   defined by California Civil Code section 3294, which warrants the imposition of

4   punitive damages against Defendants in addition to the foregoing.

5                        **SEVENTH CAUSE OF ACTION**

6                          **(Declaratory Relief)**

7                   **(Against Defendant Edmond Truong)**

8       91.     Mr. Gagacki repeats, reiterates, and realleges each and every allegation

9   set forth in all paragraphs with the same force and effect as if fully set forth herein.

10      92.     An actual controversy has arisen and now exists among Mr. Gagacki

11  and Defendants in that Mr. Gagacki contends, and Defendants deny, that:

12          (a)   That the Agreement is a valid and enforceable contract;

13          (b)   That Mr. Gagacki is a joint owner of the Rebase app and is

14                entitled to share in all of the profits, losses, and right to control

15                the joint venture; and

16          (c)   That Defendant breached the Agreement as described in this

17                Complaint.

18      93.     Mr. Gagacki seeks a judicial determination and declaration from this

19  Court that:

20          (a)   That the Agreement is a valid and enforceable contract;

21          (b)   That Mr. Gagacki is a joint owner of the Rebase app and is

22                entitled to share in all of the profits, losses, and right to control

23                the joint venture; and

24          (c)   That Defendant breached the Agreement as described in this

25                Complaint.

26      94.     A judicial determination is necessary and appropriate at this time so that

27  Mr. Gagacki may ascertain its rights with respect to performance under the

28  Agreement.

**EIGHTH CAUSE OF ACTION**

**(Violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200, *et seq*.)**

**(Against All Defendants)**

95.     Mr. Gagacki repeats, reiterates, and realleges each and every allegation set forth in all paragraphs with the same force and effect as if fully set forth herein.

96.     The UCL defines unfair business competition to include any unlawful, unfair or fraudulent act or practice, as well as any unfair, deceptive, untrue or misleading advertising. Cal. Bus. Prof. Code § 17200.

97.     Defendants' conduct is unlawful and unfair because it allows Defendants to benefit unjustly to Mr. Gagacki's detriment. Defendants have stolen approximately $2,000,000 USD of Rebase app funds and transferred it to a private digital wallet and are denying Mr. Gagacki access thereto. In so doing, Defendant converted the $2,000,000 USD. Defendants have also purportedly ousted Mr. Gagacki from the Rebase app joint venture and have proceeded to negotiate the Arbitrum Deal, which will significantly increase the Rebase app value. Mr. Gagacki is entitled to share in the profits, losses, and right to control the Rebase app. Defendants have also made the Defamatory Statements about Mr. Gagacki that have resulted in harm to Rebase app's business as well as Mr. Gagacki's personal and business reputation. Furthermore, Defendants has engaged in common law trademark infringement by continuing to use Mr. Gagacki's trademarks on the Twitter accounts they hijacked.

98.     As a direct, proximate, and foreseeable result of Defendants' wrongful conduct, Defendants have derived and received, and will continue to derive and receive, gains, profits, and advantages from their unfair competition in an amount to be proven at trial.

99.     By reason of Defendants' wrongful acts as alleged in this Complaint, Mr. Gagacki has suffered and will suffer monetary damages.

100.   Mr. Gagacki, and the public at large, have been, and continue to be, irreparably damaged by Defendants' willful violation of California State law and common law, and Mr. Gagacki has no adequate remedy at law because damage to its goodwill and reputation are continuing and difficult to ascertain. Unless enjoined, Defendants' unlawful and unfair conduct will continue, further injuring Mr. Gagacki and confusing the public.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Krzysztof Gagacki prays for the following relief:

1.   A judgement in favor of Mr. Gagacki and against Defendants on all causes of action;

2.   A preliminary and permanent injunction to enjoin Defendants from continuing to infringe on Mr. Gagacki's common law trademark rights;

3.   A judgment awarding compensatory damages according to proof;

4.   A judgment awarding Mr. Gagacki appropriate equitable relief, including without limitation restitution and disgorgement, and/or the imposition of a constructive trust over all amounts by which Defendants have been unjustly enriched;

5.   An award of exemplary and punitive damages against Defendants owing to the egregious nature of the misconduct described above, in an amount sufficient to punish Defendants and deter future misconduct;

6.   An award of attorneys' fees, costs of suit, and interest as allowed by law; and

7.   Any such other and further relief as the Court may deem just and proper.

Dated: April 17, 2023                     **ARENTFOX SCHIFF LLP**


By: _____
Allan E. Anderson
Oscar A. Figueroa
Brittany Trinidad

Attorneys for Plaintiff
Krzysztof Gagacki

1

## **DEMAND FOR JURY TRIAL**

2  Pursuant to Federal Rule of Civil Procedure 38(b), Mr. Gagacki demands a
3  trial by jury on all issues in its Complaint so triable.

4

5  Dated: April 17, 2023                              **ARENTFOX SCHIFF LLP**

6

7                                                     By:_____

8                                                          Allan E. Anderson
                                                           Oscar A. Figueroa
9                                                          Brittany Trinidad

10                                                         Attorneys for Plaintiff
                                                           Krzysztof Gagacki

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28